CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 2 3 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOSE DOMINGUEZ MENAS, )<br>Petitioner, )<br> )<br>v. )<br> )<br>TERRY O'BRIEN, Warden, )<br>Respondent. ) | | Civil Action No. 7:06-CV-00026<br><br>By: Hon. Michael F. Urbanski<br>United States Magistrate Judge |

### REPORT AND RECOMMENDATION

Petitioner, Jose Dominguez Menas ("Menas"), has petitioned the court for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the disciplinary action taken against him by the Bureau of Prisons ("BOP") as a result of a June 30, 2005 incident.[1] This matter is before the court for report and recommendation on respondent's motion to dismiss the petition, or in the alternative, motion for summary judgment. Petitioner has responded to respondent's motion by filing a motion for summary judgment. This issue is now ripe for decision.

For the reasons outlined below, it is the recommendation of the undersigned that respondent's motion be granted and the petition be dismissed. Petitioner's disciplinary hearing complied with all requirements of due process, as outlined by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974), and petitioner suffered no prejudice as a result of any failure to follow BOP procedures.

---

[1] Petitioner originally filed his § 2241 petition against Warden Bledsoe, M. Chamblee, Lynn Tillison, C/O Grapperhouse, K. M. White, and Harrell Watts. The appropriate respondent in a habeas corpus petition is the petitioner's immediate custodian, the warden of the facility in which petitioner is incarcerated. Scott v. United States, 586 F. Supp. 66 (E.D. Va. 1984). Thus, in this case, the only proper respondent is Terry O'Brien, Warden of U.S.P. Lee.

# I

Petitioner is currently housed at the United States Penitentiary in Lee County, Virginia ("U.S.P. Lee"), serving a 140 month sentence. Habeas Petition at 11. An incident report was filed on June 30, 2005, charging petitioner with a violation of prohibited act Code 219, stealing. Resp't Br. Ex. A, Attach. 1. On that day at 11:45 a.m., while shaking down inmates at the Food Service exit door, Correctional Officer ("c/o") L. Bledsoe found ten (10) eggs and two (2) cartons of milk tucked into petitioner's shirt and pant legs. Id. at ¶ 11. Petitioner claims he did not steal the items, as the eggs were given to him by fellow inmates who decided not to eat them, and the milk cartons were given to him as part of his meal; petitioner says he decided to take the items to his housing unit to eat later in the evening. Habeas Petition Ex. C, Central Office Administrative Remedy Appeal, Sept. 25, 2005; Pet'r Aff. ¶ 13.

The incident report was delivered to petitioner on June 30, 2005 at 5:00 p.m. Resp't Br. Ex. A, Attach. 1 at ¶ 14. After being advised of his right to remain silent, petitioner stated that he was walking out of Food Service with the items in his hands, not trying to hide or steal them, and that he had five (5) eggs, not ten (10) as alleged in the incident report. Id. at ¶¶ 23-24. Petitioner received a copy of the report. Id. at ¶ 25. The investigator concluded there was sufficient evidence to support the charge, and the report was forwarded to the unit disciplinary committee ("UDC") for further disposition. Id. at ¶ 26.

The UDC commenced a disciplinary hearing on July 7, 2005. Resp't Br. Ex. A, Attach. 1 at ¶ 21. On the same day, an Extension of UDC Hearing form was executed, indicating the UDC hearing had been delayed more than three (3) days due to the Fourth of July holiday and resulting staffing issues. Resp't Br. Ex. A, Attach 2. Based on the severity of the charges, the UDC

referred the incident to a disciplinary hearing officer ("DHO") for further hearing. Resp't Br. Ex. A, Attach. 1 at ¶ 19. A notice of disciplinary hearing before the DHO was filed on July 7, 2005. Resp't Br. Ex. A, Attach. 3. Petitioner indicated he wished to have Case Manager Guiterrez serve as his staff representative, and that he wished to call witnesses. Id. Petitioner later waived his rights to a staff representative, Resp't Br. Ex. A, Attach. 5, after learning Ms. Guiterrez was unavailable to represent him. Resp't Br. Ex. A at ¶¶ 11-12. Menas was further advised of his rights on July 7, 2005. Resp't Br. Ex. A, Attach. 4.

The DHO hearing was held on July 14, 2005 at 9:56 a.m. Resp't Br. Ex. A, Attach. 5 at 1. Petitioner stated, "he found the eggs in my pocket. I threw them away." Id. at 1. Petitioner acknowledged that he understood his rights and that his rights had been upheld. Id. at 1. Petitioner called inmate Dalton Hopkins as a witness, who stated "I was leaving and I saw him coming out of Food Service. He went toward the trash can and threw the food out. The c/o told him to wait and I went on out the door." Resp't Br. Ex. A, Attach. 6 at 1.

After hearing testimony and examining all evidence presented at the hearing, the DHO found that petitioner committed a violation of Code 219, stealing, when he left Food Service with items in his possession for which he had no staff permission. Resp't Br. Ex. A, Attach. 5 at 2. The DHO also noted in the report that the UDC hearing was delayed beyond established time frames, but that the delay did not hamper the petitioner's due process rights. Id. at 2. The DHO relied on the reporting officer's statement that he discovered ten (10) eggs and two (2) milk cartons in petitioner's pants and shirt while petitioner was leaving through the Food Service exit, as well as petitioner's admission that he did not have permission to take the items, in finding Menas guilty of Code 219. Id. at 2.

Sanctions for the stealing violation included loss of twenty-seven (27) days good conduct time, monetary restitution of $5.00, and thirty (30) days of disciplinary segregation, suspended pending 180 days of clear conduct. Resp't Br. Ex. A, Attach. 5 at 2. Petitioner was advised of the DHO's findings, evidence relied on, action and reasons for the action, and right to appeal. Id. at 3. A copy of the report was given to petitioner on July 22, 2005. Id. at 3. Petitioner received a copy of the amended report on November 8, 2005.[2] Resp't Br. Ex. A, Attach. 6 at 3.

On January 12, 2006, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, alleging the aforementioned disciplinary action violated his due process rights, in that (1) the DHO was biased and discriminated against him, and (2) the evidence was insufficient to support a charge of stealing. Petitioner also argues the disciplinary action violated BOP procedures, in that (1) the UDC hearing was not conducted within three (3) working days as required, (2) petitioner was denied the right to a staff representative, and (3) the DHO failed to disclose the reasons for amending the DHO report.

## II

Petitioner claims § 2241 habeas relief based on the disciplinary action taken against him, resulting in loss of good conduct time, monetary restitution, and thirty (30) days of suspended disciplinary segregation. Petitioner argues these sanctions were issued in violation of his constitutional due process rights, as well as prison regulations. As outlined below, Menas'

---

[2] The amended DHO report can be found in Attachment 6 to Exhibit A of respondent's brief. On the original report, filed as Attachment 5 to Exhibit A, the box indicating the inmate did not request witnesses was erroneously marked, though the testimony of witness Dalton Hopkins was referenced in the report. See Resp't Br. Ex. A, Attach. 5. The original DHO report was amended to show that petitioner did in fact request witnesses at the hearing. See Resp't Br. Ex. A, Attach. 6. This was the only change made to the original report. Resp't Br. Ex. A at ¶ 7.

4

disciplinary hearing afforded him all rights required under constitutional due process. Furthermore, to the extent that BOP disciplinary procedures were not correctly followed, petitioner has failed to establish prejudice. Thus, the undersigned recommends Menas' habeas petition be dismissed.

### A. Due Process Requirements

While convicted prisoners relinquish many rights upon incarceration, the due process clause of the Fourteenth Amendment requires several procedural safeguards before an inmate may be punished by the loss of good conduct time for violating prison disciplinary rules. Wolff v. McDonnell, 418 U.S. 539, 555-58 (1974). To comply with due process requirements, prison officials must provide the inmate with: (1) advance written notice of the charge against him, (2) a neutral and detached body to conduct a disciplinary hearing, (3) a written record of the disciplinary committee's findings and the evidence relied on in convicting him, and (4) in limited circumstances, the right to call witnesses and present documentary evidence at the hearing. Id. at 563-72.

The Supreme Court also has held that the revocation of good conduct time does not comport with the minimum requirements of due process unless the findings of the prison disciplinary board are supported by some evidence in the record. Superintendent v. Hill, 472 U.S. 445, 454 (1985). The Court specifically refused to require that facts in support of prison disciplinary charges be proven beyond a reasonable doubt, even where earned good conduct time is at risk. Id. at 456 ("Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.") (internal citations omitted).

5

If there is some evidence from which the conclusion of the disciplinary board is deduced, Hill's evidentiary standard is met. Id. at 455. A reviewing court's determination of whether a prison disciplinary hearing officer's findings comport with the Hill standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached" by the hearing officer. Id. at 455-56.

As petitioner's disciplinary hearing complied with due process requirements as outlined by the Supreme Court, petitioner's claim must be dismissed. The court examines each requirement in turn.

### 1. Notice

Due process requires an inmate be given advance notice of the charges brought against him. Wolff, 418 U.S. at 563. Petitioner received a copy of the incident report on June 30, 2005, the date of the incident and well in advance of either disciplinary hearing. See Resp't Br. Ex. A, Attach. 1, 5. Petitioner does not claim that he failed to receive adequate notice of the charges. The undersigned finds the notice given Menas in this case satisfies the requirements of due process under Wolff.

### 2. Neutral and detached body

Due process requires disciplinary hearings be conducted by an impartial body. Wolff, 418 U.S. at 571. To ensure impartiality, federal regulations mandate that the DHO not be the reporting officer, investigating officer, or UDC member, or a witness to the incident, nor may the DHO play any significant role in having the charges referred to the DHO. 28 C.F.R. § 541.16(b). In this case, DHO Tillison was not the reporting officer, investigating officer, a UDC member or

6

witness to the incident in question. Furthermore, DHO Tillison did not play any role in having the charges referred for DHO hearings. The record is void of evidence to suggest the hearing was anything but impartial.

Petitioner seems to claim that because the DHO found him guilty based on what Menas believes is insufficient evidence, the DHO must be biased against him. As outlined below, the undersigned finds the DHO's decision was supported by sufficient evidence. See infra § A(3). Thus, petitioner's claim that the DHO is biased because she found him guilty of a charge that lacks supporting evidence is meritless and unsupported by the record.

Finally, Menas alleges the DHO discriminated against him by finding him guilty of stealing, after dismissing similar charges against another inmate, Mr. Villabolos. Petitioner has alleged no facts to establish that the DHO was biased or discriminated against him for any reason. He only claims another inmate was found not guilty for "the same conduct on the same date DHO hearings were being conducted." Habeas Petition at 8. Menas presents no evidence in support of this claim, but instead makes the conclusory allegation that because inmate Villabolos was not charged, the DHO was biased against petitioner. This claim has no basis in fact, and accordingly, it is recommended that the claim be dismissed.

### 3. *Evidence to support charge*

Due process requires that inmates receive a written statement of the evidence relied upon and the reasons for the disciplinary action taken. Wolff, 418 U.S. at 563. The Supreme Court charges a reviewing court with determining whether there is *any evidence* in the record to support the conclusion reached by the disciplinary board. Hill, 472 U.S. at 455-56 (emphasis added).

BOP procedures, however, require that the hearing officer's decision be based on the greater weight of the evidence, where the evidence is conflicting. 28 C.F.R. § 541.15(f).

A report of the disciplinary hearing, including the DHO's findings and evidence relied on, was delivered to the petitioner on July 22, 2005. Resp't Br. Ex. A, Attach. 5. The report was later amended to correctly indicate that petitioner called witnesses on his behalf, and a copy of the amended report with said change was delivered to petitioner on November 8, 2005. Resp't Br. Ex. A, Attach. 6.

Petitioner argues that the evidence relied upon by the DHO was insufficient to support a finding of guilt for a violation of Code 219, stealing. Petitioner claims the evidence supports a violation of Code 331, possession of non-hazardous contraband. Petitioner asserts he did not steal the items, that they were given to him and he decided to take them with him to his housing unit to eat later in the evening.

According to her report, the DHO based her decision on the reporting officer's statement that he found food items in petitioner's shirt and pant legs as Menas was exiting Food Services, and on petitioner's statement that he did not have staff permission to remove the items. Resp't Br. Ex. A, Attach. 5 at 2. The undersigned finds these two statements constitute sufficient evidence to support a violation of Code 219, stealing.

Regulations define a violation of Code 219, stealing, as follows: "Theft; this includes data obtained through the unauthorized use of a communications facility, or through the unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored." 28 C.F.R. § 541.13. Petitioner argues the evidence of record supports only a violation of Code 331, possession, manufacture, or introduction of a non-hazardous tool or

8

other non-hazardous contraband, which is defined as: "Tool not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety; other non-hazardous contraband includes food or cosmetics." 28 C.F.R. § 541.13.

While the possession of food falls clearly within the ambit of Code 331, the evidence indicates that in this case, petitioner was caught removing food from Food Service without permission. He was not merely caught with food in his possession; he was caught in the act of taking food from Food Service, admittedly without permission to do so. While petitioner claims he was not stealing the food items, the statements of the reporting officer and the defendant are sufficient to establish theft from Food Services. Thus, the evidence supports a violation of Code 219, stealing, under both due process standards, which only require a showing of some evidence, and the regulations, which require the finding be based on the greater weight of the evidence. Accordingly, the undersigned recommends petitioner's claim be dismissed.

### 4. *Right to call witnesses and present documentary evidence*

Due process standards provide inmates the right to call witnesses and present documentary evidence at disciplinary hearings, Wolff, 418 U.S. at 566, and Menas was afforded those rights. Petitioner's DHO hearing was held on July 14, 2005. Resp. Br. Ex. A, Attach. 5. Petitioner was given the opportunity to call witnesses, and he called Dalton Hopkins who stated "I was leaving and I saw him coming out of Food Service. He went toward the trash can and threw the food out. The c/o told him to wait and I went on out the door." Resp't Br. Ex. A, Attach. 5. After being advised of his rights and stating his rights were upheld, Menas made the following statement: "he found the eggs in my pocket. I threw them away." Resp't Br. Ex. A,

9

Attach. 5. Based on the evidence, the DHO determined petitioner committed the alleged offense. Resp't Br. Ex. A, Attach. 5.

Petitioner does not claim his rights to call witnesses or present documentary evidence were violated in any way. The undersigned finds the disciplinary hearing complied with the requirements of due process under Wolff in this respect.

### B. BOP Disciplinary Procedures

The BOP's disciplinary procedures outlined in 28 C.F.R. part 541 comport with due process requirements established by Wolff. When a staff member witnesses or has reasonable belief that a violation of BOP regulations has been committed by an inmate, the staff member prepares an incident report. 28 C.F.R. § 541.14(a). An incident report must be filled out in situations involving prohibited acts in the high severity level (200 Code). See 28 C.F.R. § 541.13. Such violations must be referred to the UDC and a final disposition can only be made by the DHO. 28 C.F.R. § 541.14(a).

The investigating officer provides a copy of the incident report to the inmate at the start of the investigation, usually within twenty-four (24) hours, noting the date and time the inmate received it. 28 C.F.R. § 541.14(a), (b)(2). The investigator must also read the charges to the inmate and advise the inmate of his right to remain silent. 28 C.F.R. § 541.14(b)(2). The inmate is given the opportunity to make a statement on his behalf. Id. The investigating officer then thoroughly investigates the incident and records all steps and actions taken on the incident report. Id.

Upon completion of the investigation, an initial hearing is usually held by the UDC within three (3) working days. 28 C.F.R. § 541.15(b). This three (3) day period excludes the day

10

staff becomes aware of the incident, weekends and holidays. Id. The time limit may be extended for good cause shown by the staff or inmate and documented in the record of the hearing. 28 C.F.R. § 541.15(k). The inmate has a right to appear at this hearing, make a statement and present documentary evidence on his behalf. 28 C.F.R. § 541.15(c), (d). The UDC must make its decision based on at least some facts, or if there is conflicting evidence, its decision must be based on the greater weight of the evidence. 28 C.F.R. § 541.15(f). The UDC must refer all serious charges to the DHO, along with relevant documents, reasons for the referral, as well as recommendations for an appropriate disposition if the DHO finds the inmate has committed the acts charged or similar prohibited acts. 28 C.F.R. § 541.15(h).

When charges are referred to the DHO, the inmate is advised of the rights afforded him at a DHO hearing, including the right to choose a staff representative. 28 C.F.R. § 541.15(I). If a staff member declines or is unavailable due to absence from the institution, the inmate has the option of selecting another representative, waiting a reasonable amount of time for an absent staff member's return, or proceeding without a staff representative. 28 C.F.R. § 541.15(b). When it appears that an inmate is unable to properly make a presentation on his own behalf, the Warden must appoint a representative for the inmate, even when one is not requested. 28 C.F.R. § 541.15(b).

At the DHO hearing, an inmate has the right to be present, make a statement and present documentary evidence on his behalf. 28 C.F.R. §§ 541.15(I), 541.17(c). An inmate may also call witnesses, provided it will not jeopardize institutional or individual security. 28 C.F.R. § 541.17(c). The DHO must consider all evidence presented at the hearing, and base her decision on some facts; if there is conflicting evidence, she must base her decision on the greater weight

of the evidence. 28 C.F.R. § 541.15(f). The DHO must find either that the inmate committed the prohibited act and/or similar acts, or that the inmate did not commit the act charged or a similar prohibited act. 28 C.F.R. § 541.15(f)(1), (2).

The DHO must then prepare a record of the proceeding, documenting the advisement of the inmate's rights, the DHO's findings and decision, the evidence relied on, and the sanctions imposed. 28 C.F.R. § 541.15(g). The DHO must provide the inmate a written copy of the decision and disposition within ten (10) days of the DHO's decision. Id.

Petitioner alleges several violations of BOP procedures, as outlined below.

### *1. UDC hearing delay*

Petitioner claims the delay of his UDC hearing violated BOP disciplinary procedures. Regulations state that UDC hearings are *ordinarily* held within three (3) work days from the time staff becomes aware of the inmate's involvement in the incident. 28 C.F.R. § 541.15(b) (emphasis added). The three (3) day period excludes the day staff is made aware of the incident, weekends and holidays. Id. Regulations do not require that UDC hearings take place within a three (3) day time frame. See id.

Staff became aware of the incident involving Menas on June 30, 2005, at which time an incident report was drafted and delivered to petitioner. The UDC hearing was held on the fourth work day after staff became aware of the incident, which was July 7, 2005.[3] On that date, an extension form was executed, noting the delay was due to the holiday and resulting staffing

---

[3] June 30, 2005, the date of the incident, was a Thursday. Thus, the three day period began to run Friday, July 1, 2005. The second day was Tuesday, July 5, 2005, after the weekend and Fourth of July holiday, and the third day was Wednesday, July 6, 2005. Thus July 7, 2005, the date of the hearing, was the fourth working day.

12

issues. See Resp't Br. Ex. A, Attach. 2. The extension form indicates petitioner was advised of the reason for the delay, in accordance with BOP procedures, which allow the UDC to extend time limits for good cause shown by the inmate or staff. See Resp't Br. Ex. A, Attach. 2. As the UDC hearing took place less than five (5) days after staff became aware of the incident, approval of the Warden was not needed for the delay. See Resp't Br. Ex. A, Attach. 2.

Regulations do not require that the initial hearing be held within three (3) days. The BOP followed proper procedures by notifying petitioner of the reason for the delay. Petitioner's rights under BOP policy were not violated by postponing the UDC hearing for one (1) day longer than the usual three (3) day period. Even if the delay contravened BOP procedures, petitioner has failed to show how such a delay prejudiced him.

Once the requirements of due process are satisfied, petitioner must show prejudice to receive further relief from the court for violations of prison regulations. Bailey-El v. Compton, No.7:03cv806, 2004 U.S. Dist. LEXIS 29191, at *12 (W.D. Va. June 17, 2004); Von Kahl v. Brennan, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994). Petitioner claims he was prejudiced by the delay because "had the Policy and Code of Federal Regulations been followed, the incident report would have been EXPUNGED and the Unit Disciplinary hearing Committee would not [have] been allowed to Proceed any further." Habeas Petition at 5 (emphasis in original). However, petitioner presents no evidence to support his contention that the incident report would have been expunged had the regulations been followed. The regulations do not mandate that incident reports not heard by the UDC within three (3) days be expunged. The expungement petitioner seeks would contradict the nature of the court's finding in Von Kahl, in which the court stated: "this court is reluctant to overtax and/or hamstring prison officials' execution of

13

disciplinary policies and procedures by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate." Von Kahl, 855 F. Supp. at 1421.

As the petitioner has made no showing of prejudice in this case, the undersigned recommends his claim regarding the UDC hearing delay be dismissed.

### 2. *Staff representative*

Petitioner further claims that his rights were violated because he did not receive a Spanish-speaking staff representative at his DHO hearing. The Supreme Court has declined to give inmates a right to counsel at disciplinary proceedings. Wolff, 418 U.S. at 570. However, the Court found that an inmate "should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff," when the inmate is illiterate or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present evidence necessary for an adequate comprehension of the case. Id.

Regulations require that the Warden provide an inmate the service of a full time staff member to represent the inmate at the hearing before the DHO, should the inmate so desire. 28 C.F.R. § 541.17(b). The DHO arranges the presence of the staff representative selected by the inmate; if the staff member is unavailable due to absence from the institution, the inmate has the option of selecting another representative, waiting a reasonable period for the staff member's return, or proceeding without a staff representative. 28 C.F.R. § 541.17(b). If it appears that an inmate is not able to properly make a presentation on his own behalf, the Warden is required to appoint a staff representative for the inmate, even if one is not requested. 28 C.F.R. § 541.17(b).

14

Petitioner was advised of his rights, including his right to have a full time member of the staff who is reasonably available to represent him before the DHO, on July 7, 2005. Resp't Br. Ex. A, Attach. 4. Petitioner requested that Case Manager Guiterrez be his staff representative. However, as Ms. Guiterrez was unavailable to serve in that capacity due to medical reasons, the DHO provided Menas an opportunity to identify an alternate staff representative. Resp't Br. Ex. A at ¶¶ 11-12. Petitioner declined and waived his right to a staff representative. Id.; see also Resp't Br. Ex. A, Attach. 5. At the DHO hearing, Menas specifically stated he understood his rights and that they had been upheld. Resp't Br. Ex. A, Attach. 5.

Petitioner has not alleged that he is illiterate, nor has he alleged that the issue involved in his case is sufficiently complex to have required the aid of another; in which case due process would mandate appointment of a staff representative. Menas instead asserts that he was denied his right to a Spanish-speaking staff representative, claiming he has limited comprehension of the English language. Habeas Petition at 5.

When Ms. Guiterrez proved unavailable to represent him, petitioner was given an opportunity to name another staff representative, pursuant to regulations. 28 C.F.R. § 541.17(b); Resp't Br. Ex. A. at ¶ 12. Petitioner chose to waive his right to a staff representative, noting on the record at the hearing that his rights had been upheld. Resp't Br. Ex. A at ¶ 12, Attach. 5. At the hearing, petitioner never indicated he was having trouble understanding the proceedings, in which case the DHO would have been required to appoint a staff representative. See 28 C.F.R. § 541.17(b); Resp't Br. Ex. A. at ¶¶ 14-16. In her affidavit, the DHO testified that petitioner had no trouble speaking or understanding English during the disciplinary hearing, and that Menas never asked for an interpreter. Resp't Br. Ex. A at ¶¶ 14-15.

15

Furthermore, the petitioner has brought forth no evidence to establish that he does in fact have a limited comprehension of the English language. Instead, petitioner's education records show that he has been proficient in the English language since April 23, 1998, that he has taken 173 hours of English class, a total of 78 hours of ESL (English as a Second Language), and that he received his general equivalency diploma ("GED") or high school diploma, all while incarcerated between June 13, 1996 and April 23, 1998. Resp't Br. Ex. A, Attach. 7. Since that time, he has taken business I, a shop fundamentals course, and two typing classes. Resp't Br. Ex. A, Attach. 7.

Petitioner has offered no evidence to suggest that he is limited in his English comprehension, and the record does not establish such. Petitioner waived his rights to a staff representative after Ms. Guiterrez proved unavailable, and never requested an interpreter or in any way indicated he was having trouble understanding the proceedings. The undersigned finds that the disciplinary hearing comported with the requirements of due process as well as BOP regulations, and recommends that petitioner's claim regarding his lack of staff representative be dismissed.

### 3. *Amendment to the report*

Finally, petitioner claims that the DHO failed to issue him a copy of the amended report. Habeas Petition at 8. However, a copy of the report was delivered to petitioner on November 8, 2005 at 2:46 p.m. See Resp't Br. Ex. A at ¶ 8, Attach. 6 at 3. Petitioner even submitted his copy of the amended report to the court as an exhibit to his habeas petition. Habeas Petition Ex. C. This copy was marked "I/M Copy" at the top, indicating it was the inmate's copy. Clearly, petitioner received a copy of the amended report, contrary to his assertion.

16

To the extent that petitioner is challenging the amendment itself, his claim must also fail. On the original report, the DHO inadvertently indicated that petitioner did not request witnesses to testify at the hearing, though just below, she noted that witness Dalton Hopkins did testify on petitioner's behalf. Resp't Br. Ex. A at ¶ 6, Attach. 5. The only change made in the amended report involved replacing the check mark in the "No" box next to "The inmate requested witness(es)" with a check mark in the "Yes" box, to indicate that witnesses were in fact called at the hearing. Resp't Br. Ex. A. at ¶ 7, Attach. 6. Petitioner has not alleged prejudice as a result of this minor change to the report. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994). Additionally, petitioner's claim that his rights were violated because he was not informed of the reason for the amendment to the report is meritless.

As no prejudice resulted from the amendment, and petitioner received a copy of the amended report, the undersigned recommends this claim be dismissed.

### III

It is the recommendation of the undersigned that petitioner's claims regarding disciplinary action taken against him as a result of the June 30, 2005 incident be dismissed for the reasons outlined in this report. Petitioner's disciplinary hearing complied with requirements of due process and BOP procedures, as outlined in the federal regulations.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by

law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to petitioner and counsel of record.

**ENTER:** This 22nd day of May, 2006.

_____
Michael F. Urbanski
United States Magistrate Judge